## CITY OF MANCHESTER *v.* POTTER.

The sixteenth section of the act of 1846, incorporating the city of Manchester, provides, among other things, that " all fines and forfeitures, and all costs in criminal prosecutions, which shall be received by or paid into the hands of the justice of said court, [the police court,] shall be by him accounted for and paid over to the city of Manchester, in the same manner and under the same penalties for neglect, as are by law prescribed in the case of justices of the peace ; and all costs in such prosecutions, not thus received, shall be made up, taxed, certified and allowed, and shall be paid and satisfied in like manner as provided by law in cases of justices of the peace ;" and the section also fixes a salary for the police justice. *Held,* that the police justice, under this section, was entitled, in addition to his salary, to his legal costs in those criminal prosecutions in which the costs were not paid by the respondents. *Held, also,* under the same act, that the police justice was not entitled to costs accruing in cases tried by a special justice of the police court.

A member of the school committee of the city of Manchester is, in the absence of any fixed or agreed sum, entitled to receive a reasonable compensation for his services, and to be reimbursed for money properly expended.

The police justice of the city of Manchester furnished a room for keeping the files and transacting a portion of the business of the police court. *Held,* that he could recover rent for the same. He also furnished a seal for the police court. *Held,* that he was entitled to pay therefor.

ASSUMPSIT. The case was referred to an auditor, who made report, as follows :

The auditor, in his statement of the accounts between the parties, allows the plaintiffs for fines and costs received by the defendant, as acting justice of the police court of said city, on complaints made in behalf of the city by the city marshal, or by some constable or police officer of the city, and exhibited to and returned before the defendant in said court, from January 1, 1852, to January 1, 1853, for fines, $346, and for costs, $188,81 ; and from January 1, 1853, to October 10, 1853, for fines, $330,25, and for costs, $128,04, in all, $993,10 ; and he allows the defendant, on his set-off, various items, amounting to $589 ; thus leaving a balance of $404,10, due the plaintiffs.

In regard to certain costs claimed by the defendant in his set-off, but wholly disallowed by the auditor, the auditor·

finds that in sundry cases tried before the defendant, as justice of said court, on complaints made by said officers, in behalf of said city, from January 7, 1852, to September 29, 1853, in all which convictions were had and the respondents sentenced to the house of correction in said city, and committed thereto on the mittimus of said justice, the taxable costs accruing were in all $232,94, which are the same claimed by the defendant. But no portion of said costs was ever received by either of these parties.

In regard to other costs claimed by the defendant in his set-off, but wholly disallowed by the auditor, the auditor finds that in sundry cases tried in the police court, before W. L. Lane, a special justice thereof, on complaints made by the officers aforesaid, in behalf of said city, from April 20, 1852, to August 13, 1853, in which the respondents were fined and the costs paid to said Lane, and by him to the city, said costs were $51,47, which are the same claimed by the defendant.

And in regard to other costs claimed by the defendant in his set-off, but wholly disallowed by the auditor, the auditor finds that in sundry cases tried before said Lane, as said special justice, on similar complaints as aforesaid, from March 24, 1852, to April 12, 1853, in which convictions were had and the respondents were sentenced to the house of correction in said city, and committed thereto on the mittimus of said Lane ; the costs accruing were $62,40, which are the same claimed by the defendant. But no portion of said costs was ever received by either of these parties, or by any one else.

The auditor also finds that the two drafts mentioned and specified in the defendant's set-off were drawn in favor of said defendant by the members of the school committee of said city for the year 1850 or 1851, upon the treasurer of said committee, one being for ten dollars, and the other for eight dollars, the defendant then being a member of said committee. The drafts were signed by all the members of

said committee with the exception of the defendant. The draft for ten dollars was for services of the defendant in drawing the report of the committee for the then current year, which service did not in the opinion of the committee or defendant belong to him to perform, but which he did perform at the request of the other members of the committee. The draft for eight dollars was for horse and carriage hire and services of the defendant in his capacity as a member of said committee in visiting schools in the outer districts, and attending a hearing in his said capacity. The drafts were, at the request of the said committee, presented by the defendant to the city clerk. The defendant afterwards called to receive the money upon them, and was informed that the finance committee of the city had refused to accept or allow them. He then called for the drafts, but the city clerk declined to deliver them, alleging that they had become a part of the records of the city, and they were never re-delivered to the defendant. The amount paid by the city to said school committee for their services for said current year, was divided equally among the members, the defendant receiving his share.

That the defendant furnished an office or room for keeping the files and transacting a portion of the business of said police court during the twenty-one months ending October 1, 1853, and paid therefor as rent the sum of eighty-seven dollars and fifty cents. It was procured and hired by the defendant without any authority or direction from the city authorities. During the said period the said city provided a room in which to hold said police court, but the defendant did not find it convenient for the purposes of an office for keeping the files of the court, and transacting some portions of the business of said court. If the court is of opinion that the defendant should be allowed rent for said office, the auditor finds due from the plaintiffs to the defendant therefor the sum of eighty-seven dollars and fifty cents.

That the seal formerly used in said police court was old and somewhat broken, and remained in the hands of one Emerson, who had printed the blanks used in said court, and who refused to deliver said seal to the defendant, unless he, Emerson, was allowed to continue the printing of said blanks; that the defendant declined to let said Emerson continue such printing, and subsequently procured the new seal and press specified in the set-off, and the defendant has since printed such blanks.   The seal and press were procured by the defendant without any order or authority from the city therefor; and the price paid therefor was thirteen dollars and fifty cents.   If the court should be of opinion that the same should be paid, the auditor finds that the sum of thirteen dollars and fifty cents should be allowed the defendant by the said city therefor.

*D. Clark,* for the plaintiffs.

*Clarke & Bell,* for the defendant.

EASTMAN, J.   The controversy in this case grows out of the defendant's set-off; several items of which have been referred to this court for determination.

With regard to the first item, being the sum of $232,94, the court have found some difficulty in arriving at a conclusion entirely satisfactory.

The act incorporating the city of Manchester was passed in 1846.   In the sixteenth section of the act is the following provision : "All fines and forfeitures, and all costs in criminal prosecutions, which shall be received by or paid into the hands of the justice of said court, [the police court,] shall be by him accounted for and paid over to the city of Manchester, in the same manner and under the same penalties for neglect as are by law prescribed in the case of justices of the peace ; and all costs in such prosecutions, not thus received, shall be made up, taxed, certified and allowed, and

shall be paid and satisfied in like manner as provided by law in cases of justices of the peace."

A further provision of the same section is as follows: " The justice of said court shall account for and pay over to the city of Manchester all fees by him received, or which now accrue to justices of the peace in civil actions and criminal prosecutions, and the said city of Manchester shall pay annually the sum of five hundred dollars in full compensation for all services assigned to him by the provisions of this act."

Were we to consider the first branch of the section cited, as an independent provision, we do not feel confident that the proper construction should not be that the costs in all criminal prosecutions should go to the police justice. By it he is required to pay over to the city all fines and forfeitures, and all costs by him received, " in the same manner and under the same penalties for neglect as are by law prescribed in case of justices of the peace ;" and in those prosecutions where the costs are not received by him, they are to be made up, taxed and allowed, and " paid and satisfied " in like manner as provided by law in cases of justices of the peace. Now there is no provision of statute requiring justices of the peace to pay over costs by them received in any instance. They are required to pay over all " fines and forfeitures" by them received, to the town, county or person to whom the same is payable, and in default thereof they forfeit double the amount received. Rev. Stat. ch. 222, § 11. But there is nothing indicating in the remotest degree that the "costs" received by justices of the peace are to be paid over by them to any one. When, therefore, the police justice pays over " in the same manner and under the same penalties," it might well be argued that the statute is answered by paying " the fines and forfeitures," to the non-payment of which alone a penalty is attached. And in those prosecutions before justices of the peace where the costs are not received from the defendants, the same are paid by the complainants

or the county. Such is the general rule and practice in this State, and which in some instances is specially provided for. Rev. Stat. ch. 222, § 21.

But assuming that all the costs in criminal prosecutions received, as well as the fines and forfeitures, are to be paid over to the city by the police justice, still the latter clause of this branch of the section appears to show quite clearly that in those prosecutions where the costs are not collected the city should pay them. They are to be made up, taxed, certified, allowed, paid and satisfied in like manner as provided by law in cases of justices of the peace. In such prosecutions before justices of the peace, the costs are paid to the justices by the complainants or the county; and if in similar prosecutions before the police justice, the costs are to be paid "in like manner," then they must be paid to the police justice by the city, whose prosecutions they are, being made by their officers; or they must be paid by the county. It would be unreasonable to require that the county should pay them, because the city and not the county receive not only the fines and forfeitures, but the costs also, in all successful prosecutions. The city, too, is emphatically the complainant, and should also be held to pay them on that ground, in the same manner as they would be obliged to do were the prosecutions brought before a justice of the peace.

The next clause cited provides that the police justice shall pay to the city all "fees" by him received, "or which now accrue to justices of the peace in civil actions or criminal prosecutions." Whether it was intended to use the term "fees" here as distinguishable in some way from the term "costs," in the other clause, is not clear; and what was intended by the phrase "or which now accrue to justices of the peace in civil actions and criminal prosecutions," is equally uncertain. If we were to take the phrase in its literal sense, it would seem to indicate that the police justice should pay over all fees which would accrue to him in all prosecutions, both civil and criminal, whether the same were

received by him or not; but such a requirement would be unreasonable in the extreme, since it would make him surety for the fees in all the ill-advised and unfounded suits that might be instituted in the police court, and might more than absorb his whole salary. · If by this clause of the section any thing more was intended than to repeat what had been said in the former clause, and then to provide that the costs in civil suits which should be received by the police justice should be paid to the city, we do not readily discover what it was.

Taking both branches of the section together, we think it must mean this, that the police justice was to do all the ordinary business of the city falling within his powers and jurisdiction, and that in all prosecutions, civil and criminal, brought before him, he was to pay over to the city all the fines, forfeitures and costs that he might receive; in consideration for which he was to be paid an annual salary of five hundred dollars; that as to those criminal prosecutions where the fines and forfeitures went to the city, and where the costs were not collected, they are not regarded by the act as of that legitimate character which are required to be performed by the police justice, without special compensation therefor; and hence the provision that " all costs in such prosecutions not thus received, shall be made up, taxed, certified and allowed, and shall be *paid* and *satisfied* in like manner as provided by law in cases of justices of the peace." Consequently, as we have already seen, the costs in such prosecutions should be paid by the city; and this part of the charter would seem senseless, unless payment is made to the police justice, in prosecutions where the costs are not received.

These costs are not necessarily lost to the city. They may still collect them of the defendants, if they can; but when they are not paid to the police justice and received by him from the respondents, they are to be taxed, allowed and paid to him. Such prosecutions are treated by the act as

not falling within his legitimate duties, to be performed for his salary, and are such as he should receive compensation for.

This sixteenth section of the charter was probably taken in substance from the Massachusetts statute upon the subject of police courts, and an attempt was made to mould it so as to conform to our laws in regard to justices of the peace. Justices of the peace receive for their services in criminal prosecutions their legal fees, either from the defendants, if they are paid by them, or from the complainants or the county. The police justice is, in the main, the justice of the peace for the city. He receives a stated salary, instead of the costs that are paid by the defendants, and where the costs are not paid by the respondents, he receives them from the city, which is *de facto* complainant, and county also, to him, so far as his city duties are concerned.

The city council are authorized by their charter to make almost innumerable regulations appertaining to the city, and to impose fines and forfeitures for a breach thereof, and the act appears to contemplate that the salary of the police justice shall cover all prosecutions which can be enforced, and not those which are unadvisedly brought, or where nothing can be collected; and that for the latter he shall be paid in the same manner as justices of the peace are paid for similar services in their respective counties.

Thus stood the charter upon this question until June, 1851, if we have not overlooked any intermediate acts. On the 26th of June, 1851, an act was passed by which the police justice was authorized to hold the office and perform the duties of clerk of the police court. His salary was fixed at three hundred dollars, instead of five, as provided by the charter; and this provision was made: " The said justice shall account for and pay over to the city treasurer, as *now* provided by law, all fines and fees by him received in actions and prosecutions by or in behalf of said city as aforesaid, and shall be entitled to retain to his own use the fees by him received or receivable in all other cases."

City of Manchester *v.* Potter.

A further act was passed in 1853, raising the salary of the police justice to five hundred dollars, and providing that all the fees, fines, &c., should be paid to the city marshal, instead of the police court. This act was made dependent upon the vote of the city ratifying the same, and was not to take effect until accepted by a majority of the voters of the city. By the general provision of law it would take effect on the 15th of September, 1853, but whether it has ever been accepted so as to be in force according to its provisions, we are not advised. Nor is it very material, so far as this case is concerned, whether it is in force or not, for this item of the defendant's set-off accrued between January 7th, 1852, and September 29th, 1853, so that probably nearly all of it was for services rendered while the act of 1851 was in force; and in the absence of any suggestion to the contrary, we take it to be so.

The act of 1851 appears to have reduced the salary in consequence of making the police justice clerk of the police court, but so far as receiving and paying over the fines and costs are to be considered, or his retaining to his own use the fees by him received or receivable, there seems to be no change; the only alteration in the law in this respect being that the police justice should pay over to the city treasurer, instead of the city marshal, all fines, &c.

This item of the defendant's set-off was for costs not paid, and which, in the words of the section, " shall be made up, taxed, certified and allowed, and shall be paid and satisfied in like manner, as provided by law in cases of justices of the peace;" and we think it must be allowed.

In considering the question, we have been without the aid to be derived from the arguments of counsel, and the particular views entertained by the parties have not been stated to the court. But we can discover no reasonable interpretation to be given to the section other than the one which we have adopted; and it appears to us that this clause of the section must be entirely rejected, unless we

give it the construction stated. If the Legislature had intended the salary to be in full of all official services whatsoever which should be done for the city, one short paragraph could have expressed the whole matter; and the reservations, exceptions, repetitions and circumlocutions which now appear in the acts would not only be unnecessary, but would not, in any ordinary legislation, be found at all.

We are aware of the decision in *Potter* v. *Norris*, 6 Foster's Rep. 330. But that decision does not conflict with this. All that was decided by the court in that case was, that the fees in *civil* cases and in prosecutions for military fines, which are *quasi* civil, belonged to the city, and might be collected in the name of the police justice. That decision did not affect the question of costs in criminal prosecutions. The case did not require it.

The two next items of the set-off cannot be allowed. They are for services rendered by Mr. Lane, the special justice, and there is no provision of law by which these costs belong to the police justice.

The item for the draft should be paid. They were for services rendered and moneys expended by the defendant for the city, and duly certified to by all the members of the school committee. There was no fixed salary for this committee. The amount which the defendant received, equally with the other members of the committee, would appear to be for services similar to those rendered by them. These drafts were for extra services performed by the defendant, and there is no suggestion that the services were not valuable, or that they were not performed, or that the money was not properly expended. Besides, the drafts were retained by the city clerk, without being paid when they were the property of the defendant, and undoubtedly an action of trover could have been maintained for the drafts themselves, if the defendant had seen fit to take that course instead of seeking to obtain compensation for his services by way of set-off to the claim of the city against him.

The item for rent should also be allowed. It was the duty of the city to procure a suitable room for keeping the files and transacting the ordinary office business of the police court; and if they did not do it, but suffered the defendant to hire a room and occupy it for those purposes, and the room was thus used with their knowledge and consent, and the room in which the police court was held was not a convenient and proper one to keep the files in, all of which we infer from the finding of the auditor, we see no reason why the city should not pay this item. The fact that it was procured without direction from the city authorities does not change their liability, inasmuch as it was used with their knowledge and for the purposes of the city. If the authorities disapproved of the act of the defendant in this respect, they should have so informed him, instead of suffering the room to be thus used for their purposes.

Neither do we discover any good reason why the seal and press should not be paid for. The one which Emerson had was old and broken, and the defendant could not obtain it without a condition which he was not obliged to submit to. It is not suggested that the sum paid by the defendant was unreasonable. The seal was used for the business of the city, and was one of those matters incidental to courts which will occasionally become necessary to be procured for the transaction of business, and if purchased in good faith, and used for the court—and there is no suggestion in this case to the contrary—it should be paid for. The city have had the benefit of this seal. It has been used by its officers, and with its knowledge, and without objection, so far as the case shows, and for aught that appears, is now used for the same purposes.

The claim of the plaintiffs appears to have been properly allowed under the sections of the acts to which we have referred, and the accounts between the parties, so far as referred to us, will stand thus:

Plaintiffs' claim, .............................$993,10
Defendant's set-off allowed by auditor,....$589,00
Items of costs between January, 1852, and
    September, 1853,.....................232,94
Items of drafts,.......................... 18,00
Rent,................................. 87,50
Seal and press,......................... 13,50
                ————— 940,94

    Leaving a balance of.......................$52,16

    For which sum the plaintiffs should have judgment, with interest from the date of the writ.