UPTON *v.* MANCHESTER.

*Police Justice of Manchester—Construction of statutes—Compensation for services—Salary—Fees and costs—Case overruled.*

The charter of the city of Manchester provided that all costs in criminal proceedings, which were not paid to the judge of the police court by respondents, should be made up, taxed, " paid and satisfied in like manner as provided by law in cases of justices of the peace." The effect of this was, to allow the judge of the police court to recover of the city, and to retain to his own use, those costs, in addition to his annual salary. Gen. Stats., ch. 250, sec. 13. Subsequent amendatory acts prescribe the salary of said judge, which is declared to be " in full compensation for all services performed by him in behalf of said city, * * and for all fees in actions for which the city would otherwise be responsible." *Held,* the police justice is not entitled to recover of the city fees in cases prosecuted by the city, in which city officers were complainants, and in which no costs were paid by the respondents.

*Manchester* v. *Potter,* 30 N. H. 409, overruled.

FROM HILLSBOROUGH CIRCUIT COURT.

ASSUMPSIT, by Samuel Upton against the city of Manchester, for fees as police justice for six years prior to the date of the writ, in cases prosecuted by the city, in which city officers were complainants, and in which no costs were paid by the respondents. These fees are claimed under the charter of the city, section 16, and amendments to the same since passed, as found in the Laws of 1851, ch. 1105, and in the Laws of 1855, ch. 1683, and in the Laws of 1867, ch. 7. The plaintiff was appointed justice of the police court of Manchester in February, 1857, and held the office until July, 1874, and during that time made out his bill for salary and office rent against the city quarterly, presented the same, and received payment therefor, and presented no claim against the city for any of the items claimed in this suit until the suit was commenced.

The foregoing case was transferred to the superior court to determine the question of the liability of the defendants in the action.

*Morrison & Hiland* (with whom were *Cross & Burnham),* for the plaintiff.

The questions in this case arise upon the charter of the city and the amendments thereto.

I. Section 16 of the charter establishes a police court for the city, and provides (p. 16, bottom, City Charter and Ordinances) respecting

those cases in which the fines and costs are paid,—"All fines and for-
feitures, and all costs in criminal prosecutions, which shall be received
by or paid into the hands of the justice of said court, shall be by him
accounted for and paid over to the city of Manchester, in the same
manner and under the same penalties for neglect as are provided by
law in the case of justices of the peace;" and respecting those cases
in which no costs are paid by the respondents,—"And all costs in such
prosecutions not thus received shall be made up, taxed, certified, and
allowed, and shall be paid and satisfied in like manner as provided by
law in cases of justices of the peace;" and near the middle of page 17,
respecting costs in civil suits and salary of justice,—" The justice of
said court shall account for and pay over to the city of Manchester all
fees by him received, or which now accrue to justices of the peace in
civil actions and criminal prosecutions, and the said city of Manches-
ter shall pay annually the sum of five hundred dollars in full compen-
sation for all services assigned to him by the provisions of this act."
The amendment of 1851 is found on page 36 of City Charter and
Ordinances. The first section makes the justice clerk of said court.
The second section is as follows: "The justice of said court shall
annually receive a salary of three hundred dollars, to be paid by the
city of Manchester in quarterly payments of seventy-five dollars each,
which shall be in full for all services performed by him for the said
city, and all fees in actions and prosecutions prosecuted by said city, or
the officers thereof, for which the said city would otherwise be respon-
sible. The said justice shall account for and pay over to the city
treasurer, as now provided by law, all fines and fees by him received in
actions and prosecutions by or in behalf of said city as aforesaid, and
shall be entitled to retain to his own use the fees by him received or
receivable in all other cases." It will be seen that this section affects
the clause relating to the salary, and the one relating to those cases in
which costs and fines are paid, but makes no allusion to the clause re-
lating to those cases in which no costs are paid. Section 3 repeals
all acts inconsistent with this act.

The construction of the charter as it now stands was considered by
the court in *Manchester* v. *Potter*, 30 N. H. 409. In this case the city
brought an action against the justice to recover the fines and costs
paid to him, and the defendant filed as a set-off the fees accruing to
him as justice in those cases in which no costs had been paid by the
respondents; and the main question before the court was upon the
right of the justice to these fees—the same question that is before the
court in this case. In that case, on page 416, the court, having discuss-
ed the above provision of section 16, say,—" The police justice is, in the
main, justice of the peace for the city. He receives a stated salary in-
stead of the costs that are paid by the defendants, and when the costs
are not paid by the respondents, he receives them from the city, which
is *de facto* complainant and county also to him, so far as his city duties
are concerned." And respecting the effect of the amendment of 1851,
and the right of the justice to these fees, the court say, page 417,—

" The act of 1851 appears to have reduced the salary of the justice in consequence of making the police justice clerk of the police court; but, so far as receiving and paying over the fines and costs are to be considered, or his retaining to his own use the fees received or receivable, there seems to be no change, the only alteration in this law in this respect being that the police justice should pay over to the city treasurer instead of the city marshal, &c. This item of the defendants' set-off was for costs not paid, and which, in the language of the section, "shall be made up, taxed, certified, and allowed, and shall be paid and satisfied in like manner as provided by law in cases of justices of the peace," and we think it must be allowed. The enactment of this amendment did not then repeal the clause requiring these costs to be paid, and this settled the question of the city's liability as the charter then stood, and as it now is, unless some subsequent amendment has changed it.

II. The case refers to only two amendments since 1851,—one that of 1855, found on page 44 of City Charter and Ordinances, and the other that of 1867, on page 54; and, as we understand it, these are the only amendments that can in any way affect this question.

The act of 1855 provides: Section 1, in relation to the writs, &c., issued by the court; section 2, in relation to returns of writs of summons; section 3, in relation to powers and duties of special justice; section 4, in relation to salary of the justice, and is a copy of the first part of section 2, act of 1851; section 5, in relation to the fines and costs paid in. No reference is anywhere made to those cases in which no costs are paid.

The act of 1867 relates simply to salary of justice, and, changing the amount of the salary, is a copy, word for word, of the fourth section of the amendment of 1855.

III. 1. These amendments do not modify or repeal the section of the charter requiring these costs to be "taxed up, certified, allowed, and paid and satisfied in like manner as is by law provided in cases of justices of the peace." They do not change the construction of the charter as given by the court, nor do they relieve the city of the liability to pay these costs. Section 4 of the act of 1855 is the only section or part of these amendments that can in any way be claimed as affecting this question, and this contains no direct reference to this class of cases. If it repeals the clause under which we claim these fees, it is by implication, and this the law does not favor. " The law does not regard with favor repeals by implication, and will not, unnecessarily, admit them. Particularly is this true of statutes which are merely affirmative in their character; and if a later statute can by reasonable construction be reconciled with a prior one, both will be allowed to stand." *State* v. *Otis,* 42 N. H. 72.

That this does not repeal by implication is very evident from the fact that the act of 1851 did not, and this is a substantial copy of the first part of section 2 of that act. A comparison of the two acts shows that the one is a copy of the other, and was intended simply to increase the

amount of the salary, and leave the matter of fees precisely where *Manchester* v. *Potter* left it.

| ACT OF 1851, SEC. 2. | ACT OF 1855, SEC. 4. |
|---|---|
| The justice of the said court shall annually receive a salary of three hundred dollars, to be paid by the city of Manchester in quarterly payments of seventy-five dollars each, which shall be in full for all services performed by him for the said city, and of all fees in actions and prosecutions prosecuted by said city or the officers thereof, for which the said city would otherwise be responsible. | The justice of the police court of the city of Manchester shall annually receive a salary of five hundred dollars, to be paid by said city in equal quarterly payments, which shall be in full compensation for all services performed by him in behalf of said city, for all charges against the city as clerk of said court, and for all fees in actions for which the city would otherwise be responsible. |

It is apparent that the only difference between them is in the amount of salary. Each applies the salary in payment of the same services, and in almost precisely the same words; and if the section in the charter requiring these costs to be paid and the act of 1851 can stand together, then that section and the act of 1855 must stand together also.

"An older statute will not be repealed by a more recent one, unless the latter expressly negatives the former, or unless the provisions of the two are manifestly repugnant, in which case the earlier enactments will be modified or repealed. When both the acts are affirmative, and the substance such that both may stand together, the latter does not repeal the former, but they shall both have concurrent jurisdiction." *State* v. *Wilson*, 43 N. H. 418. The act of 1855 does not negative the law as it stood when *Manchester* v. *Potter* was decided: both acts are affirmative, the substance of each the same, and if the same principle of construction is to be applied to the act of 1855 as was to the act of 1851—if the same words now mean the same thing as then—the liability of the city to pay these costs is established.

2. It is not to be inferred that the increase of salary was made in lieu of these costs: the salary never exceeded the costs paid the city. The business of the court had increased more than threefold. The fees of justices had been almost doubled by law. In 1866 the fee for examination was raised from 34 cents to $1; and in 1867, when the salary was doubled, the fee for complaint and warrant was doubled also —from 75 cents to $1.50. "If the legislature had intended the salary to be in full of all official services whatever which should be done for the city, one short paragraph could have expressed the whole matter; and the reservations, exceptions, repetitions, and circumlocutions which now appear in the acts, would not only be unnecessary, but would not, in any ordinary legislation, be found at all." *Manchester* v. *Potter*, 30 N. H. 418.

3. The enactment of the acts of 1855 and 1867 is an adoption by the legislature of the construction given by the court to the act of 1851.

"It is an established legal maxim, that, when the legislature adopt or reënact a statute, the previous construction of the statute, as settled by the courts of law, is adopted." *Tomson* v. *Ward*, 1 N. H. 12; *Frink* v. *Pond*, 46 N. H. 125. "Unless there is found in the revision such a change of the language as to indicate a clear intention to change the law, it is an established legal doctrine that the previous construction of the statute, as settled by the courts of law, is adopted. The construction will not be changed by such alterations as are designed to render the provisions more concise. Where the law, antecedently to the revision, was settled either by clear expressions in the statutes or adjudication on them, the mere change of phraseology shall not be deemed a change of the law, unless such phraseology evidently purports an intention of the legislature to work a change." *Jewell* v. *Hoderness*, 41 N. H. 161. "The general principle relied on   *   *   that, when a section of a former statute is merely abridged with such changes of phraseology as are necessary to effect such abridgement, it will not be taken that there was any design on the part of the legislature to change either the effect or the construction of the statute, in our view, is correct and sound." *Mooers* v. *Bunker*, 29 N. H. 427; *Burnham* v. *Stevens*, 33 N. H. 258.

That which was law by judicial construction has thus become law by legislative enactment, and the construction given by the court to the act of 1851 is as much law as though incorporated in the statute in words, and the court has no more right to reverse that construction than it has to repeal any law upon the statute book.

That the construction given by the court was a correct one is to be inferred from the fact that one of the justices concurring in it was the Hon. S. D. Bell, a resident of the city, the reputed author of the charter, and the first police justice under its provisions. His knowledge of the matter, his ability and integrity, eminently qualified him to express an intelligent opinion. The city can well afford to pay this claim : the record of the police court will show that it has received, in justice fees paid in, almost if not quite enough to pay the full salary of the justice and this claim in addition. The court can well adopt as its own, from *Tomson* v. *Ward*, changing only a few words to adapt it to this case,—"Whatever might have been the opinion of the court, if this question were now for the first time to be decided on the words of the act of 1851, without reference to the former established construction of the act, they believe they are justified, on sound principles of law and public justice, in adhering to what has been for so many years the construction of this law."

*James F. Briggs*, for the defendants.

I. The case relates to the city charter and amendments thereto; but the only law actually pertinent to this issue is the act of 1867, chapter 7, found on pages 54 and 55 of City Charter and Ordinances, which provides,—"Section 1. The justice of the police court of the city of Man-

chester shall annually receive a salary of one thousand dollars, to be paid in equal quarterly payments, which shall be in full compensation for all services performed by him in behalf of said city, for all charges against the city as clerk of said court, and for all fees in actions for which the city would otherwise be responsible." Approved June 19, 1867. Said act continued in force without change until July 1, 1874. In *Manchester* v. *Potter*, 30 N. H. 418, quoted and relied on by the plaintiff, the court, per EASTMAN, J., say, referring to charter and amendments,—" If the legislature had intended the salary to be in full of all official services whatsoever which should be done for the city, one short paragraph could have expressed the whole matter; and the reservations, exceptions, repetitions, and circumlocutions which now appear in the acts would not only be unnecessary, but would not in any ordinary legislation be found at all."

The legislature of 1867, acting evidently upon the above suggestion, expressed the whole matter in a very short paragraph; nor does there appear to be, in the act above quoted, such a redundancy of "reservations, exceptions, repetitions, and circumlocutions," as to render the meaning, intent, and effect of said act ambiguous, obscure, or uncertain. The language is plain and common, and the act, as a whole, is concise and complete in all its parts. "The rule is, as we shall constantly see, cardinal and universal, that, if the statute is plain and unambiguous, there is no room for construction or interpretation." Sedgw. on Stat. and Const. Law (2d ed.) 194, 195. Again : "It is a well settled rule, that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services." Dillon on Mun. Corp. (1st ed.) 206. The plaintiff accepted the office of police justice, or, what is the same thing in effect, retained it, after the salary had been fixed as above stated, and after the duties of the office had been plainly and explicitly defined and declared. He was "to take cognizance of all crimes and offences and misdemeanors committed within the city of Manchester, whereof justices of the peace now have or may hereafter have jurisdiction "—City Charter and Ordinances, sec. 16 ; and received his salary, under the act of 1867, for services in those cases and those alone; receiving in addition, from private parties, fees in all civil cases, in naturalizations, &c., and from the county of Hillsborough, fees in preliminary examinations.

"There is no such implied obligation on the part of municipal corporations, and no such relation between them and officers which they are required by law to elect, as will oblige them to make compensation to such officers, unless the right to it is expressly given by law, ordinance, or by contract. Officers of a municipal corporation are deemed to have accepted their office with knowledge of and with reference to the provisions of the charter or incorporating statute relating to the services which they may be called upon to render, and the compensa-

tion provided therefor. Aside from these, or some proper by-law, there is no implied assumpsit on the part of the corporation with respect to the services of its officers." Dillon on Mun. Corp. 203;—refers, also, to *Sikes* v. *Hatfield*, 13 Gray 347 ; *Barton* v. *New Orleans*, 16 La. An. 317 ; *Garnier* v. *St. Louis*, 37 Mo. 554 ;—see, also, *Worcester* v. *Walker*, 9 Gray 78. In the statute relating to this case, not only is the right to such extra compensation not expressly given, but, on the contrary, it is expressly declared that " one thousand dollars " paid " shall be in full compensation for all services performed by him on behalf of said city, for all charges against the city as clerk of said court, and for all fees in actions for which the city would otherwise be responsible." An act could not well be made more comprehensive and exclusive. There is no ambiguity, no uncertainty, in the terms used. It requires no judicial interpretation to make it understood. Sedgw. on Stat. and Const. Law 208, adopting the language of the court in 3 Seld. 97, and 1 Mich. 469, 479. It is evident, then, that if the case is to be determined upon the act of 1867, the plaintiff cannot recover.

II. Under the provisions of the charter this action cannot be maintained. It is expressly provided therein—page 17, Charter and Ordinances—" The justice of said court shall account for and pay over to the city of Manchester all fees by him received, or which now accrue to justices of the peace in civil actions and criminal prosecutions, and the said city of Manchester shall pay annually the sum of five hundred dollars in full compensation for all services assigned to him by the provisions of this act ; " and the court, in *Potter* v. *Norris*, 26 N. H. 331, say, in construing the provision just quoted, that the fees payable to the police justice, and formerly to justices of the peace, " are to be paid over to the city of Manchester, and do not belong to the police justice." That they are to be paid over to the city of Manchester, is expressly required by the terms of the charter ; that they " do not belong to the police justice," is evident from the fact that they are so required to be paid over, and secondly, because neither the charter, nor any amendment thereto, nor any law of the state, expressly gives the police justice the right to such fees. Dillon on Mun. Corp. 203. The right of the police justice, in respect to all fees, is declared in *Potter* v. *Norris*, 26 N. H. 331, to be the " right of action to recover them for the benefit of the city." Whether paid in at the time of judgment or at any time thereafter, or recovered by action in the name of the police justice, they are to be accounted for and paid over to the city, and do not belong to the police justice. " No question therefore arises as to the ownership of the fees, for that is settled by the charter." *Potter* v. *Norris*, 26 N. H. 331. The decision in *Manchester* v. *Potter*, 30 N. H. 409, is relied on in opposition to the above view. In that case the question was not fairly presented. The case was not argued by counsel, nor apparently was there even a brief filed therein. The court was left alone with the charter, or detached portions thereof, to reach such conclusion as a partial, cursory, and hasty examination would lead to. That decision will not bear a critical examination. It is not clear and

certain in anything. With a sort of double negative pregnant the court say, referring to first branch of the section cited,—"We do not feel confident that the proper construction should not be that the costs in all criminal prosecutions should go to the police justice." Again, referring to the last clause of section 16 of the charter, and to the phrase " or which now accrue to justices of the peace in civil actions and criminal prosecutions," the court *(Manchester* v. *Potter)* say,—"If we were to take the phrase in its literal sense, it would seem to indicate that the police justice should pay over all fees which would accrue to him in all prosecutions, both civil and criminal, whether the same were received by him or not [could they be properly said to have accrued to him in the latter case ?]; but such a requirement would be unreasonable in the extreme,"—and, they might justly have added, has never been contended for. Yet equally unreasonable is that construction of the charter which entitles the city to receive from the police judge the fees received by him in criminal prosecutions, and then requires the city to pay him back fees in cases where the city has received nothing. Such a law would furnish the greatest possible inducement and opportunity for corruption, since it would be manifestly for the advantage and interest of the police justice to discharge all persons brought before him for minor offences ; and bind over all charged with graver offences, in which case the county would pay his fees ; or by remission of fine, or by applying the ready capital of the accused to the payment of the fine exclusively, or otherwise, by ways that are dark, prevent the payment of the fees which should follow a conviction. It is against the policy of the law ; it violates every principle of justice ; it contravenes public policy; and it can, we believe, be found expressly provided in no law in this country, that the justice or jury shall profit or lose by the event of the suit in one way rather than in the other.

The ground for that construction of the charter is stated to be, " that as to those criminal prosecutions where the fines and forfeitures went to the city, and where the costs were not collected, they are not regarded by the act as of that legitimate character which are required to be performed by the police justice without special compensation therefor." In other words, the wealth or impecuniosity of the accused decides the question as to the legitimacy of the proceeding. Further on (30 N. H. 416) it is said, "the act appears to contemplate that the salary of the police justice shall cover all prosecutions which can be enforced, and not those which are unadvisedly brought, or where nothing can be collected." Such a construction is clearly unwarranted. The police justice receives his salary " in full compensation for all services assigned to him by the provisions of this act "—section 16 of charter—and those services are declared to be (same section) " to take cognizance of all crimes and offences and misdemeanors committed within the city of Manchester, whereof justices of the peace now have or may have jurisdiction." The law says all crimes, &c.—and certainly the law does not carve up the offences charged, or the services of the police justice, into legitimate or illegitimate classes or sections. That

decision was based entirely upon the clause—" and all costs in such prosecutions, not thus received, shall be made up, taxed, certified, and allowed, and shall be paid and satisfied in like manner as provided by law in cases of justices of the peace "—the effect of which under our statute is very indeterminate, utterly disregarding or ignoring the subsequent clause of the same section, which provides that the salary of the police justice shall be " in full compensation for all services assigned to him by the provisions of this act." In order to ascertain the intent of the legislature, the court were bound to consider the whole law, and not a portion of it only—Sedgw. Stat. and Const. Law 199, *et seq.;* and where the provisions of the law are inconsistent, the last clause is to be regarded as expressing the latest will of the legislature. Sedgw. Stat. and Const. Law 105, note to 100, 353, *et seq.; Johnson* v. *Byrd,* 1 Hemp. 434 ; *Powers* v. *Barney,* 5 Blatch. C. C. 202 ; *Maddock* v. *Graham,* 2 Metc. (Ky.) 56 ; *Edgar* v. *Greer,* 8 Clark (Ia.) 394 ; *Tierney* v. *Dodge,* 9 Minn. 166 ; *Wood* v. *Wellington,* 30 N. Y. 218. The intent and reason of the law are also evident, from the fact that justices of the peace receive their entire compensation in fees to be paid by one or both the parties litigant, while the police justice is given a salary in lieu of fees, in full compensation in criminal cases. See, also, Police Courts, ch. 196, Rev. Stat., secs. 1, 13, 14.

III. The amendment of 1851. That amendment repealed, by implication, the portion of the charter relating to the salary of the police justice, and the payment over of fees in all cases, except in actions or prosecutions by or in behalf of said city. *Hillsborough* v. *Manchester,* 49 N. H. 59, 60. In *Manchester* v. *Potter,* 30 N. H. 417, the court say,— " The act of 1851 appears to have reduced the salary, in consequence of making the police justice clerk of the police court "—which strikes one as being very singular if true ; and proceed to say,—" but, so far as receiving and paying over the fines and costs are to be considered, or his retaining to his own use the fees received or receivable, there seems to be no change," when an extract from the act referred to on the preceding page (30 N. H. 416) shows that the court must have known the contrary to be true. The original charter required the police justice to pay over the fees by him received in all cases, civil as well as criminal ; the act of 1851 authorized him to retain to his own use fees received in all cases, except in actions and prosecutions by or in behalf of said city ; and that provision, rather than an increase of duties, it is reasonable to suppose, accounts for the reduction of his salary. In the case last cited, the court do not discuss nor even allude to the question as to the repeal, by implication, of the portions of the charter in question by the act of 1851, and were evidently unaware of the existence of that clause in the act of 1851, which provides that the salary of the police justice " shall be in full for all services performed by him for the said city, and of all fees in actions and prosecutions prosecuted by said city or the officers thereof, for which the said city would otherwise be responsible." " It is equally well settled, that a subsequent statute, which is clearly repugnant to a prior

one, necessarily repeals the former, although it does not do so in terms; and even if the subsequent statute be not repugnant in all its provisions to a prior one, yet, if the later statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original." Sedgw. Stat. and Const. Law 104;— see, also, *Kellogg* v. *Oskosh*, 16 Wis. 623. This rule has been adopted in this state. When a subsequent statute revises the whole subject-matter of a former one, and is clearly designed to be a substitute for it, the former law is repealed by implication, although no express terms to that effect be used. *Hillsborough* v. *Manchester*, 49 N. H. 60; *State* v. *Otis*, 42 N. H. 71; *State* v. *Wilson*, 43 N. H. 419, and cases cited; *Leighton* v. *Walker*, 9 N. H. 59; *Sumner* v. *Steward*, 2 N. H. 42; *Wakefield* v. *Phelps*, 37 N. H. 295, 305; *Lisbon* v. *Clark*, 18 N. H. 239; *Hall* v. *Martin*, 46 N. H. 348. Even accepting as correct that version of the charter which would give to the police justice fees in cases where the complainant may be held responsible, yet the act of 1851 was plainly and clearly designed to be a substitute for it, in providing that the salary given shall be in full of all fees in actions and prosecutions prosecuted by said city or the officers thereof, for which the said city would otherwise be responsible. Affirmative expressions introducing a new rule imply a negative. The last portion of the above clause was not in the charter, and was evidently inserted in the act of 1851 to remove all doubts, and settle, finally, the question as to the right of the police justice to any portion of such fees in any contingency. It is entirely inconsistent with the provision of the charter relied on by the plaintiff: the phrase " otherwise be responsible " is comprehensive and exclusive. There is no pretence that the city can be held responsible otherwise than as complainant. There can be no question as to the meaning and effect of the above provisions, nor of the term "full compensation." A construction that would entitle a person to receive fees in cases where the law explicitly gave him a salary in full of all such fees, and of any claim he may have thereto, would certainly be unwarranted and outrageous. It would establish the identity of right with wrong; of affirmative with negative averments. It would render futile any efforts the legislature might make to be understood positively and with certainty in any case. Courts will construe words, terms, and phrases according to the natural and obvious import of their language, where such words, terms, and phrases are of common and general use; and in no event will a construction be favored which would render such words, terms, or phrases meaningless or senseless, or inconsistent with or repugnant to their usual and obvious meaning. Sedgw. Stat. and Const. Law 220; *Walker* v. *Harris*, 20 Wend. 555, *et seq.* Sec. 3, act of 1851, provides,—"All acts and parts of acts inconsistent with this act are repealed."

IV. Amendments since 1851. The case mentions only that of 1855 and that of 1867, the act of 1870 increasing the jurisdiction and fees of the police justice in civil cases, and the act of 1872 permitting cities to pay additional salary, not being pertinent to this issue. It is

not claimed that there have been, since the act of 1851, any material changes in the law, applicable to this case, except as to the amount of the salary;—three hundred dollars, act of 1851; five hundred, act of 1855; and one thousand, act of 1867. Under the act of 1867, the aggregate compensation of the police justice during the period in question was not far from twenty-five hundred dollars per annum, which may perhaps be deemed inadequate, especially in comparison with the extremely liberal salary paid the higher judicial officers in this state, whose offices may possibly be deemed mere sinecures beside that of the police justice of the city of Manchester, which occupies from one to two hours daily of the time of one who, under the charter, must necessarily be a "learned, able, and discreet person;" but it is immaterial whether or not the "increase of salary was in lieu of costs," or whether "the salary exceeded the costs paid to the city," or whether "the business of the court had increased" and "the justice fees had been doubled." The statute gave the police justice a monopoly of the justice business within the city of Manchester, and it would not be unreasonable to expect the services to be rendered for less than the full amount of statutory fees,— and such an arrangement would be for the manifest advantage of both parties; but it suffices to say that the law fixed the salary, and the legislature can at its pleasure increase or diminish the salary or the duties of that office. The city of Manchester can probably "afford to pay this claim;" so, too, the millionaires of New York city can undoubtedly afford to pay their employés a thousand dollars per annum in addition to their stipulated salary;—yet it will hardly be contended, except by those of communistic principles or tendencies, that that circumstance alone gives those employés a right of action as to that sum, or any other, against their employers.

The enactment of the act of 1855 cannot be considered an adoption by the legislature of the construction given by the court in reference to the charter and amendment of 1851, since the act of 1855 must have been passed before the decision in *Manchester* v. *Potter*, if rendered, could have been known. If of any value, it must rather be considered as an adoption of the decision in *Potter* v. *Norris*, 26 N. H. 331.

V. In *Tomson* v. *Ward*, 1 N. H. 12—the first case reported—the court say,—"Whatever might have been the opinion of the court, if this question were now for the first time to be decided on the statute of 1791, without a reference to the former established construction of the statute, they believe they are justified, on sound principles of law and public policy, in adhering to what they believe has been the uniform construction of this law, in this state, for nearly a century past;" and this court is asked to "adopt" that declaration "as its own, * * changing only a few words to adapt it to this case"—as follows: "Whatever might have been the opinion of the court, if this question were now for the first time to be decided on the words of the act of 1851, without reference to the former established construction of the act, they believe they are justified, on sound principles of law and public justice, in adhering to what has been, for so many years, the con-

struction of this law." The sacred name of Justice is invoked in place of policy ; and " the uniform construction of a law for nearly a century past " is to be offset by " the [a] construction of a law for so many years," *i. e.*, nineteen years, when, too, the last mentioned construction is opposed and overborne by two decisions, viz.,—one in *Potter* v. *Norris,* 26 N. H. 331, the other in *Hillsborough* v. *Manchester,* 49 N. H. 58,— the only other cases that have arisen under this charter and amendments thereto. It cannot be that a decision such as was rendered in *Manchester* v. *Potter* is unquestionable or immutable, or that the place whereon it standeth is holy ground. Even the court rendering the decision express great doubt, uncertainty, and perplexity in regard to very many positions they felt called on to assume : and therein they have vindicated their wisdom. It is now the settled doctrine, both in England and in this country, that, where the language of the statute is plain and unambiguous, there is no room for a judicial construction, and the will of the legislature must be obeyed. Sedgw. Stat. and Const. Law 179 ; *Ellis* v. *Paige,* 1 Pick. 43. In view of the diverse decisions rendered on many questions pertinent to this issue, which have arisen under the charter and amendments, it would be absurd to treat the question arising in this case as "*res adjudicata.*" An independent judiciary will not hesitate to examine fairly and fully every question presented to them, and change or reverse the ruling in any former decision, when such change or reversal is authorized and demanded by every consideration of right, of law, and of impartial justice.

The *plaintiff's counsel,* in reply.

The defendants' brief seems to admit the law to be as we claim ; and its argument is, that the decision in *Manchester* v. *Potter* should be reversed, and assigns as reasons,—(1) That other decisions seem to conflict with it ; (2) that the decision will not bear a critical examination ; (3) that the provisions of ch. 196, Gen. Stats., apply to this case.

I. The earliest decision referred to is *Potter* v. *Norris,* 26 N. H. 331. This case relates to fees in civil suits and military actions. Actions for the recovery of military fines are civil, not criminal. *Cate* v. *Nutter,* 27 N. H. 515. No question arose in this case which required the court to examine, nor does it appear to have examined, the provision of the charter relating to fees in criminal cases, under which the plaintiff claims to recover, and which provides that " all costs in such prosecutions, not thus received, shall be made up, taxed, certified, and allowed, and shall be paid and satisfied in like manner as provided by law in cases of justices of the peace." This case had to do with fees in civil actions ; that of *Manchester* v. *Potter,* with fees in criminal actions. This required a construction upon one clause of the charter ; that, of another. It is difficult to see how they could conflict with each other. If they did, that of *Manchester* v. *Potter* being most recent would prevail. In fact, however, the only question in *Potter* v. *Norris* was, whether—granting that the fees belonged to the city—the action could

be maintained in the name of the justice; and that question the court decided affirmatively.

The next case referred to is the more recent one of *Hillsborough* v. *Manchester*. In this the question was, whether the fines paid to the city by order of the police court belonged to the city or to the county. No question relating to fees was raised or considered, except incidentally, and then only in reference to costs in those cases in which costs were paid; and upon this point the court quotes from *Manchester* v. *Potter* in support of its conclusions—page 59. No reference whatever is made to those cases in which no costs are paid, nor is there any allusion to the provision of the charter requiring such costs to be made up, taxed, &c. The question here is entirely different from the question in *Manchester* v. *Potter*, and each required an examination of a different clause in the charter; and here, as in *Potter* v. *Norris*, there is and can be no conflict with the decision in *Manchester* v. *Potter*. These are the only decisions referred to, and the only ones that can refer in any way to the questions in issue.

II. The character and ability of the court and counsel are a sufficient answer to the criticism upon the decision.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

III. Chapter 196, Gen. Stats., does not apply to police courts of cities established by special provisions of the city charter. This is evident from the language and requirements of the statute itself, especially from the first section. No action such as is contemplated by that section has ever been taken by the city. No provision has ever been made by the city to pay the salary of the justice. No decision of the court, upon any of the questions brought before it respecting the police court of the city, has ever applied these provisions to it, nor has any counsel ever before referred to that chapter as in any way affecting it. If this chapter does so apply, then the city, not having made any provision respecting the salary, are bound to pay full fees. This chapter is identical with ch. 1282, Laws of 1852, and its title shows its import,—"An act for the establishment of police courts and the appointment of police justices in certain cases,"—and is evidently intended to apply to police courts of such towns as accept by vote its provisions. The statement, that the plaintiff has received for his services as justice an annual compensation of twenty-five hundred dollars, is supported by no evidence, and is not true. The law of last June establishes the salaries of justice and clerk, for doing the same work as imposed upon the plaintiff, at eighteen hundred dollars, and if the plaintiff should recover the full amount claimed in this action his compensation would not then exceed that sum. The case of *Manchester* v. *Potter* is the only case in which the question here raised has ever been considered by the court, and it is admitted that according to that decision the plaintiff is entitled to recover. No subsequent legislation has modified or repealed the provision of the charter upon which that decision rests, and upon which this claim is founded. The provision requiring that " all costs in such prosecutions, not thus received, shall be made up, taxed, certified, and

allowed, and shall be paid and satisfied in like manner as provided by law in cases of justices of the peace," was the law during the whole time for which the plaintiff claims to recover. The defendants knew of this law and their liability under it. They allowed that law to stand, and never sought its repeal, or denied the right of the plaintiff to recover these fees by virtue of it. Some of the fees accruing to the justice under this law have been paid to the plaintiff, year after year, with the knowledge and consent of the defendants, not only in cases of preliminary examination acknowledged to have been paid to him in the defendants' brief (page 2, sec. 2, l. c.), but also in appeal cases, and in many cases in which the respondents were committed, and to those payments the defendants never made objection. The plaintiff claims that he is as much entitled to these fees as he was to his salary ; that they were a part of the compensation by law given to him for his services ; and that to deny them to him is in effect denying the sacredness of a contract.

The *defendants' counsel*, in reply to the plaintiff's second argument.

The defendants' former brief does not admit the law to be as claimed by the plaintiff, but takes issue squarely against it. The defendants do claim that the decision in *Manchester* v. *Potter* should be reversed, although such reversal is not necessary in order to settle the questions arising in this case in favor of the defendants. The decision in *Manchester* v. *Potter* was upon the construction of the charter. This case calls for a consideration only of the law as it existed during the period in question,—that is, from January 1, 1868, to January 1, 1874 ; and that law is the act of 1867, and such portions of the charter and amendments thereof as were not then repealed, either expressly or by implication. The reasons referred to in the plaintiff's supplemental brief are a few only of the minor and least important reasons we incidentally assigned for the reversal of the decision in *Manchester* v. *Potter*.

1. We submit the reasoning of the court, in *Potter* v. *Norris* and in *Hillsborough* v. *Manchester*, to the consideration of this court, and ask if these courts did not consider the question arising under the charter and amendment of 1851 fairly and fully. In the latter case, the court was directly called on to consider a point which formed one of the principal reasons assigned in *Manchester* v. *Potter* for the decision in that case, viz., as to whether the city of Manchester, or the county of Hillsborough, were entitled to the fines imposed in state cases in the police court of Manchester ; and, contrary to the theory of the court in *Manchester* v. *Potter*, it was decided that these fines belonged to the county ; and, accordingly, the city paid the county $1,788.33 on account of such fines received ;—and the plaintiff, it appears, with an eye on the main thing, jumped in, and claimed a portion of that money for services in cases where, as he claimed, the county was liable, and for back pay and dues generally : so that it appears we are not alone in

our criticism of the decision in *Manchester* v. *Potter*. We claim that the decisions in *Potter* v. *Norris* and in *Hillsborough* v. *Manchester* are valuable, for the same reason and purpose that other decisions are—not as concluding controversies, but as lights to the judicial mind; and *Manchester* v. *Potter* is of value for no other purpose. The light to be derived from that decision may be apparent to the plaintiff, but can only be accounted for upon the undulatory theory.

\*        \*        \*        \*        \*        \*        \*        \*        \*

The plaintiff says that the " defendants knew of this law, and their liability under it." True: and they knew, indeed, as did the plaintiff, that, whether the court's construction of the charter was correct or incorrect, after the passage of the act of 1867, referred to, *their* liability was measured by the sum of one thousand dollars. " They allowed that law to stand, and never sought its repeal," because they had no interest in having it otherwise, since their own liability was expressly limited and hedged about; and if " they never denied the right of the plaintiff to recover these fees by virtue of it," it was because the plaintiff never asserted any right to those fees for nearly seventeen years, and, in the words of the " case," "presented no claim against the city for any of the items claimed in this suit until the suit was commenced." The evident intent of the legislature in enacting the sixteenth section of the charter was, that the city themselves should take the place of the justices of the peace, and should employ the police justice to do the labor for them, paying him therefor a salary in full compensation. All costs, therefore, belonged to the city absolutely, as formerly to justices of the peace, and the section so declares. The city, then, could not have been made liable to pay themselves. If complaints are made by city officers, under requirement of a state law, the city cannot be held liable, such officers being, *pro hac vice*, state officers; and if the making of complaints is no part of the duties of the marshals and police officers, the city cannot be held liable. In any view that can be taken of the matter, there is no law, nor reason, for holding the city responsible for costs to any one, and least of all to the police justice. The only law authorizing the police justice to retain fees, in any case, was the closing portion of section 2 of the amendment of 1851, referred to; and that act was, by chapter 273 of the General Statutes of this state, expressly repealed. Section 5 of the act of 1855, referred to, required " all fees, fines, and forfeitures accruing to said city, or paid by order of said police court," to be paid to the city marshal, in the same manner as they had theretofore been required by law to be paid to the justice of the police court. That provision has never been repealed. The plaintiff, therefore, ever since January 1, 1868, has collected fees, and retained them, without authority of law, and is probably indebted to the city, on that account, between six and eight thousand dollars. That " some of the fees accruing to the justice under this law have been paid to the plaintiff year after year, \*. \*   and to these payments the defendants never made objection," is wonderful if true; but we are unable to perceive the pertinency that has to the present case, inasmuch at it is not pretended that any of

those fees were paid by the city. The assumption that the city had " knowledge " of such payment is unwarranted, and their " consent," if given, was a piece of impertinence, if the plaintiff's claim that he is entitled to them is correct.

\*      \*      \*      \*      \*      \*      \*      \*      \*

" The rule [that a public officer is bound to perform the duties of the office for the salary] is of importance to the public. To allow changes and additions in the duties of an office to lay the foundation for extra services, would soon introduce intolerable mischief. The rule, too, should be very rigidly enforced. The statutes of the legislature, and the ordinances of our municipal corporations, seldom prescribe with much particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official [*Manchester* v. *Potter*, for instance]; and if those distinctions are much favored by courts of justice, it may lead to great abuse." Dillon on Mun. Corp. 206. One illustration will suffice. The charter permits complaints to be taken before a justice of the peace, and he may issue warrants thereon; and, if the police justice deems that there was just and reasonable cause for issuing such warrant, the justice is entitled to his fees for such complaint and warrant—page 16, charter : how easy it would be for the police justice to arrange with some justice of the peace to take *all* the complaints and issue *all* the warrants, the fees for which are one half of the justice fees in the police court. It is important, then, that not only the letter but the spirit of the law be observed, and that nothing be taken from the public and given to individuals, unless the right thereto is expressly declared by law.

Our positions, then, are briefly these: (1) That the charter of '46 imposes no liability upon the city to pay costs in any case to the police justice; (2) that the decision in *Manchester* v. *Potter* stands alone, unsustained by a single decision, and is opposed to the rules of construction uniformly adopted in this country—see 37 N. H. 248, 249, 32 N. H. 250, 35 N. H. 36, and cases cited; that in any event it is of value solely as a light to the judicial mind, the same as other decisions, and must be weighed side by side with the decisions in *Potter* v. *Norris* and *Hillsborough* v. *Manchester*, and the whole current of American authorities. It gave extra compensation because the charter did not expressly otherwise provide, as the plaintiff claims. But that is not the correct rule, as we have shown—Dillon on Mun. Corp. 203, 206 ; (3) that whatever differences of opinion may reasonably be entertained with reference to the proper construction of the charter, there can be but one opinion as to the force and effect of the amendment of 1851, which considers and disposes of the question as to the liability of the city to the police justice for anything beyond his stipulated salary, in language too plain and common to be misunderstood, too positive to be disregarded; that the provisions of that act relating to the compensation of the police justice are more complete and definite, more comprehensive and exclusive, than are the provisions of our statutes relating

to any other officer in the state; (4) that the act of 1855 repeated, almost literally, that provision of the act of 1851 relating to the compensation of the police justice, and, at the same time, indicated a purpose on the part of the legislature that the question raised in *Manchester* v. *Potter* should never rise again, by providing that the fees, fines, and forfeitures should be paid to the marshal instead of to the justice; (5) that while the provisions of the act of 1855, and former acts, are of value as indicating the intent of the legislature, yet the act of 1867 covers and concludes this whole controversy,—fixes, measures, and limits, in plain and unmistakable terms, the liability of the city of Manchester to the police justice during the period in question,—the amount of which liability, as the case shows, has been fully paid and satisfied; (6) that the plaintiff's action, with reference to extra compensation during a seventeen years service as police justice, virtually concedes the correctness of the foregoing position, and ends the case.

\* FOSTER, C. J., C. C. This is a claim made by the late judge of the police court in Manchester for fees in cases prosecuted by the city, upon the complaints of city officers, in which no costs were paid by the respondents; and concerning which the charter of the city, before its amendment, provided that such costs should be "made up, taxed, certified, and allowed, and paid and satisfied in like manner as provided by law in cases of justices of the peace," that is, paid to the police judge by the city, unless the prosecution had been directed by the counsel for the state, or allowed by the court of common pleas. Rev. Stats., ch. 222, sec. 21; Gen. Stats., ch. 250, sec. 13. The contention here is concerning the effect of subsequent amendments upon this provision of the original charter. These amendments are found in the Laws of 1851, ch. 1105, sec. 2; the Laws of 1855, ch. 1683, sec. 4; and the Laws of 1867, ch. 7.

The law of 1851 constituted the judge of the police court of Manchester, clerk, also, of that tribunal, and in consequence of the increase of his compensation, by thus conferring upon him the emoluments of that position, diminished, from $500 to $300 per annum, his salary as judge. This salary was declared to be in full for all services performed by him for the said city, " and of all fees in actions and prosecutions prosecuted by said city, or the officers thereof, for which the said city would otherwise be responsible." Laws of 1851, ch. 1105, sec. 2.

If there had been no judicial construction of this portion of the act of 1851, I should say that its purpose and intention to deny and disallow such a claim as the plaintiff now prefers are quite manifest.

Before the passage of the act of 1851, the police judge was entitled to tax his statutory fees in certain cases, and have them paid and satisfied by the complainant, that is, the city.

By the terms of the amendment, after giving him new emoluments as clerk, and apparently in consideration thereof, his new salary as

---

\* SMITH, J., being a resident of Manchester, did not sit.

judge is declared to be, not merely as provided in the charter, " in full compensation for all services assigned to him by the provisions of this act," but, more specifically, " in full for all services performed by him for the said city, and of all fees in actions and prosecutions prosecuted by said city, or the officers thereof, for which the said city would otherwise be responsible.

What can be plainer than this language, as indicating that he was no longer to have the fees " provided by law in cases of justices of the peace," to be taxed against complainants, in cases not paid by respondents—such being the only kind of fees and costs for which, under the the charter, before its amendment, the city were held responsible? For it will be observed that the original charter (sec. 16) requires him to pay over to the city all other costs and fees by him received in civil or criminal actions or prosecutions.

And in the respect under consideration, the law is not changed by the amendment of 1855. The salary is restored to its original amount —$500—and declared to be " in full compensation for all services performed by him in behalf of said city, for all charges against the city as clerk of said court, and for all fees in actions for which the city would otherwise be responsible."

The act of 1867 is in the precise language of the act of 1855, except that the salary is fixed at $1000 instead of $500.

There would seem to be no uncertainty about the language or intention of the legislatures of 1851, 1855, or 1867, with regard to this matter. Their language would seem to require no judicial interpretation.

As the plaintiff's claim, here, is to recover fees accruing between the years 1868 and 1873 inclusive, reference would not be required to any act prior to that of 1867, were it not that former acts, which are said to be, and which indeed are, practically identical with the act of 1867, have received a judicial construction by a former court, which we are now called upon to revise.

Three cases in our reports are referred to as having expressed an interpretation of the acts of 1851 and 1855. They are *Potter* v. *Norris,* 26 N. H. 330, *Manchester* v. *Potter,* 30 N. H. 409, and *Hillsborough County* v. *Manchester,* 49 N. H. 57.

The first and the last of these cases did not raise the point now in issue, nor was it considered in any such way as to make them authority in the present discussion. Moreover, I do not see how the first could properly have furnished any grounds for the decision of the second, nor how the third depends upon the first or the second for its support.

The second case, then—*Manchester* v. *Potter*—stands by itself, and it is said by the plaintiff to be conclusive authority for his right of recovery in this action ; while, upon the other hand, the defendants contend that, if the decision in that case be predicated upon and applicable to the state of facts here presented, it ought to be overruled.

I think it is applicable, and that if its authority is to be sustained the plaintiff must recover.

As to the general principles laid down by the reporters and in the

text books upon constitutional, statutory, and municipal law, and concerning which the learning and industry of counsel upon both sides of this case have been exercised, there seems to be no conflict of sufficient importance to call for our interference. Indeed, the general principles that a substantial revision of the entire body of a statute is a repeal of previous inconsistent provisions, and that the legislature may prescribe, and increase or diminish, the salaries of officers appointed by its authority, may be considered as thoroughly settled and established.

Turning our attention, then, to the case of *Manchester* v. *Potter*, the court recite that portion of the 16th section of the charter of Manchester, which provides that "All fines and forfeitures, and all costs in criminal prosecutions, which shall be received by or paid into the hands of the justice of said court [the police court], shall be by him accounted for and paid over to the city of Manchester, in the same manner and under the same penalties for neglect as are by law prescribed in the case of justices of the peace ; and all costs in such prosecutions, not thus received, shall be made up, taxed, certified, and allowed, and shall be paid and satisfied in like manner as provided by law in cases of justices of the peace."

And, then, assuming that the proper construction of this provision is, that " all the costs in criminal prosecutions received, as well as the fines and forfeitures, are to be paid over to the city by the police justice," they go on to assume that a fair construction (an inevitable construction) of the latter clause of the same branch of the section shows " quite clear, that in those prosecutions where the costs are not collected the city should pay them."

The court then go on to recite a further provision of the same section of the original charter : " The justice of said court shall account for and pay over to the city of Manchester all fees by him received, or which now accrue to justices of the peace in civil actions and criminal prosecutions," &c., and the learned judge delivering the opinion of the court concludes that probably by this was intended no more than to repeat what had been said in the former clause, and then to provide that the "costs in civil suits which should be received by the police justice should be paid to the city." The result is, that the costs in all criminal prosecutions not received " are not regarded by the act as of that legitimate character which are required to be performed by the police justice without special compensation therefor."

All this seems to be plain enough, and a rational conclusion, even without the extended judicial argument adduced in support of it.

But the court then proceed to recite the amendatory act of 1851, and they reach the conclusion that, as to the retaining by the police justice to his own use " the fees by him received or receivable, there seems to be no change." The court say,—" This item of the defendant's set-off was for costs not paid, and which, in the words of the section, ' shall be made up, taxed, certified, and allowed, and shall be paid and satisfied in like manner as provided by law in cases of justices of the peace ;' *and we think it must be allowed.*"

This is the *non sequiter* which I cannot follow. I think the plaintiff's claim in that case should not have been allowed.

The item in dispute was a charge, by way of set-off, for costs in criminal prosecutions, like the plaintiff's claim in the case at bar.

The judgment of the court in *Manchester* v. *Potter* is based upon its construction of the latter clause of the second section of the act of 1851, which is as follows : " The said justice shall account for and pay over to the city treasurer, as now provided by law, all fines and fees by him received in actions and prosecutions by or in behalf of the city as aforesaid [What are these? A reference to the original charter shows them to be " all fees by him received, or which now accrue to justices of the peace in civil actions and criminal prosecutions ;" and the preceding clause of the amendatory act provides that his salary shall be " in full for all services performed by him for the said city, and of all fees in actions and prosecutions prosecuted by said city, for which the said city would otherwise be responsible "], and shall be entitled to retain to his own use the fees by him received or receivable in all other cases."

What must he pay over to the city, then, in consideration of and as covered by his annual salary ? and what may he retain to his own use, or recover in this action ?

He must pay over " all fees by him received, or which now accrue to justices of the peace in civil actions and criminal prosecutions," and, since his annual salary is expressed to be in full for—therefore he must *not* retain nor claim of the city any of the fees in actions and prosecutions prosecuted by said city, for which the said city would otherwise be responsible,—that is to say, the fees in actions prosecuted by said city or the officers thereof, which are provided by law in cases of justices of the peace, to be taxed against complainants in cases not paid by respondents; and he may retain "the fees by him received or receivable in all other cases,"—that is to say, in all civil actions not prosecuted by the city, and in all criminal prosecutions except those prosecuted by the city or its officers. See the compilation of the Charter and Ordinances of the City of Manchester (ed. of 1870), page 17, note *d.*

I am therefore unable to agree to the conclusion adopted by the court in *Manchester* v. *Potter.* The case was not carefully considered, for the reason that the court were not furnished with " the aid to be derived from the arguments of counsel, and the particular views entertained by the parties [were not] stated by the court." 30 N. H. 417. If the case is to be regarded as in conflict with the views which I have expressed (a conclusion not to be derived from the head note), I am prepared to say it should be overruled.

It seems to be conceded that the act of 1855 made no change in the law, material to the present consideration.

We come then to the question, How does the plaintiff's claim stand in view of the act of 1867 ?—for this must govern it. " The justice of the police court * * * shall annually receive a salary of one

thousand dollars  *  *  *  which shall be in full compensation for all services performed by him in behalf of said city,  *  *  *  and for all fees in actions for which the city would otherwise be responsible;" and, for the reasons which I have expressed, I am of the opinion that the city ought not to be charged in the present action.

CUSHING, C. J.  By the act of June 26, 1851, entitled "An act relating to the police court of the city of Manchester," sec. 2, it is provided that the salary of the justice of the police court, in that section mentioned, " shall be in full for all services performed by him for the said city, and of all fees in actions and prosecutions prosecuted by said city or the officers thereof, for which the said city would otherwise be responsible." Substantially the same provision occurs in the act of July 14, 1855, entitled "An act in amendment of the charter of the city of Manchester ; " and in the act of June 19, 1867, entitled "An act relating to the police court of the city of Manchester," occurs, substantially, the same provision.

The plaintiff was appointed to the office in February, 1857, and continued to hold it till July, 1874.  During all this time no change has been made in this particular, except from time to time by increasing the salary, which, I believe, has never been considered unconstitutional.

I cannot see what possible color or pretence of any claim for any fees and services beyond the stipulated salary can exist.  I am quite unable to comprehend the reasoning of the court in the case of *Manchester* v. *Potter* on this point, and I think we ought not to hold ourselves bound by it.  I am therefore of opinion that the plaintiff cannot recover.

LADD, J.  I am of the same opinion, and do not desire to add anything to the reasons given by my brethren for overruling the case of *Manchester* v. *Potter*, so far as that case must be overruled to hold that the plaintiff here is not entitled to recover.  It seems to me the language of the statute is too plain to admit of doubt.

*Judgment for the defendants.*